UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAVI ANN MORENO,<br><br>                    Plaintiff,<br><br>          v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Case No. 1:22-cv-01477-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 12). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability and supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 18).

Plaintiff argues as follows: "The ALJ's RFC determination was not supported by substantial evidence whereafter failing to properly evaluate the opinion evidence, the ALJ rendered a lay interpretation of the raw medical evidence in crafting Plaintiff's mental RFC determination." (ECF No. 12-1, p. 11).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows:

**I.  ANALYSIS**

Plaintiff first argues that "the ALJ's RFC determination is not supported by substantial evidence because he failed to properly evaluate the opinions of consultative examiner Amy T. Watt, Ph.D., and state agency consultant R.A. Tyl M.D." (ECF No. 12-1, p. 13). Defendant argues that the ALJ properly evaluated both opinions under the pertinent legal standards. (ECF No. 14, pp. 17-27).

**A.  Legal Standards**

Because Plaintiff applied for benefits in 2020, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 248-58). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Accordingly, under the new regulations, "the decision to discredit any medical opinion,

must simply be supported by substantial evidence." *Id.* at 787. Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

Lastly, as Plaintiff's argument ultimately attacks the ALJ's RFC formulation, the Court notes that the ALJ assessed the following RFC for Plaintiff:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple and repetitive tasks in a routine work setting, performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and infrequent and gradual workplace changes, occasional interaction with the public, and occasional interaction with coworkers and supervisors.

(A.R. 29).

In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g).

### 1. Dr. Watt

With the above standards in mind, the Court turns to Dr. Watt, who conducted a mental consultative exam of Plaintiff and prepared a report finding some marked limitations in mental functioning. In deeming Dr. Watt's opinions not "generally persuasive," the ALJ stated as follows:

> The mental consultative examiner found the claimant was moderately impaired in her ability to understand and carry out simple tasks and instructions, accept simple instructions from supervisors, and manage money, and markedly impaired in her ability to understand and carry out complex tasks and instructions, relate and interact with coworkers and the general public, maintain persistence and pace, perform work activities on a consistent basis, perform work activities without special or additional supervision, and associate with day-to-day work activities, including attendance and safety (Exhibit 7F). Although the consultative examiner had the benefit of an in-person examination of the claimant, her opinion is not entirely supported by the consultative examination nor is it entirely consistent with the objective medical evidence (Exhibits 2F; 5F-7F). For instance, the consultative examiner noted the claimant scored 30/30 on the MMSE-2, indicating she exhibited no cognitive impairment and adequate information processing and concentration, which does not support a finding that the claimant has marked limitations in areas related to understanding, remembering, or applying information and concentrating, persisting, or maintaining pace (Exhibit 7F). Similarly, such findings are not consistent with the objective medical evidence, including mental status examinations reflecting mostly unremarkable findings, such as intact memory, average intelligence, and normal attention and concentrating ability, and the claimant's longitudinal treatment history, as discussed above (Exhibit 2F/11, 14, 26, 29, 33, 36, 42, 45, 48, 51, 58, 60; 5F/11, 14, 20, 23, 26, 29, 33, 35, 51, 54, 66, 69, 73, 76, 82, 85, 88, 91, 98, 100; 6F/5, 8, 29, 32). Accordingly, overall, I do not find the opinion of the consultative examiner generally persuasive.

(A.R. 31-32, 836-42).

Plaintiff argues that the ALJ failed to properly evaluate the supportability and consistency factors in reviewing Dr. Watt's opinion. The Court disagrees.

As to supportability, the ALJ reasonably concluded that, although Dr. Watt was able to examine Plaintiff in-person, her opinions were unsupported by her exam. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."). Specifically, the ALJ observed that Plaintiff scored perfectly, 30/30, on a mini-mental state examination (MMSE-2), which, as reflected in the report, indicated "no cognitive impairment." (ECF No. 838). The exam results, which included tests concerning Plaintiff's ability to remember words, count backwards from 100 by 7, and copy a simple design, failed to support Dr. Watt's assessment that Plaintiff had marked limitations in areas related to understanding, remembering, or applying information and concentrating, persisting, or

4

maintaining pace.

As to consistency, the ALJ reasonably concluded that the unremarkable and normal findings in the record were inconsistent with the marked limitations assessed. *Woods*, 32 F.4th at 793 (upholding decision to find opinion unpersuasive "because it was inconsistent with the overall treating notes and mental status exams in the record"). In support, the ALJ cited numerous records and referred to earlier portions of the decision. Included among these records are mental status exams finding that Plaintiff had "normal attention and concentrating ability," had "average" intelligence, and had "intact" judgment. (A.R. 429, 621, 807).

Plaintiff challenges the ALJ's rationale for three reasons. First, Plaintiff asserts that it was counterintuitive for the ALJ to discount Dr. Watt's opinion and yet assess an RFC that "implicitly incorporate[d]" one of Dr. Watt's limitations—that Plaintiff was limited to simple and repetitive tasks involving simple work-related decisions. (ECF No. 12-1, pp. 15-16). However, as Defendant points out, this is not entirely accurate. (ECF No. 14, p. 19). As noted above, the ALJ took issue with the marked limitations that Dr. Watt assessed. One of those marked limitations was her ability to make judgments on simple work-related decisions. (A.R. 840). As for carrying out simple tasks and instructions, Dr. Watt only found Plaintiff moderately limited. (A.R. 839). Based on these circumstances, it was not counterintuitive for the ALJ to limit Plaintiff's RFC to simple and repetitive tasks (for which Dr. Watt indicated only moderate limitations)[1] and to simple work-related decisions (for which Dr. Watt indicated marked limitations, but which limitations the ALJ did not agree with).

Plaintiff's second are third arguments are similar and will be considered collectively. Plaintiff argues that "the ALJ's sole acknowledgment of Plaintiff's MMSE-2 in considering the supportability factor was insufficient as a matter of law where the ALJ failed to consider the extent to which Dr. Watt's assessed limitations were supported by Plaintiff's emotional issues rather than cognitive impairment as evaluated by the MMSE-2," generally arguing that the ALJ ignored other facets of the exam and Dr. Watt's review of the record. (ECF No. 12-1, pp. 16-17). While the ALJ did not explore all facets of Dr. Watt's exam in the cited portion above, the ALJ

---

[1] Notably, the ALJ found that Plaintiff had moderate mental limitations. (A.R. 27-28).

referred to other reasons "discussed above," thus incorporating reasoning contained elsewhere from the opinion. For example, in addressing the severity of Plaintiff's limitations earlier in the opinion, the ALJ acknowledged exam findings from Dr. Watt—that Plaintiff "exhibited scattered thought processes," "was tearful and anxious," and had "a depressed mood"—but ultimately rejected Dr. Watt's assessment of marked limitations, generally because the record contained findings that did not support, or contradicted, such assessments and because Plaintiff's daily activities—such as being able to drive, shop, and prepare meals—indicated that she was only moderately limited.[2] (A.R. 26-28).

And while Plaintiff contends that Dr. Watt's report was supported by her "review of records," it does not appear that Dr. Watt actually reviewed the record. While the "[f]unctional [a]ssessment" portion of the report contains a summary statement that the assessment was "[b]ased on behavior, observation, reported history, and review of records," at the beginning of the report, Dr. Watt listed "[n]o records" under the heading, "[r]eview of [r]ecords." (A.R. 836, 838). Further, Dr. Watt provided this limiting statement in the report:

> The purpose of today's evaluation was to provide diagnostic and clinical impressions, and to evaluate the claimant's current level of work-related abilities from an emotional and cognitive, not medical, standpoint. However, it should be noted that the present evaluation was limited in scope. It was based on only one session of client contact, in a structured environment, with preauthorized tasks. Background information was considered to be limited and primarily provided by the claimant and other listed sources. Corroboration of self reported history is recommended.

(A.R. 838). Thus, the circumstances indicate that Dr. Watt's conducted no, or at least a limited, review of Plaintiff's medical records.

Relatedly, the Court recognizes Plaintiff's general argument that the ALJ ignored evidence consistent with Dr. Watt's report, and notes Plaintiff's citation to records that arguably support her position. (ECF No. 12-1, p. 19). However, this is not a case where the ALJ simply ignored probative evidence. Rather, the ALJ acknowledged such evidence, but concluded that it

---

[2] To the extent that Plaintiff would argue that the ALJ should have repeated this rationale in the section discounting Dr. Watt's report, the Court notes that any error is harmless if the ALJ's rationale can reasonably be discerned even if explained with less than ideal clarity. *Treichler*, 775 F.3d at 1099.

ultimately did not support Dr. Watt's assessments. (A.R. 30-32 - noting evidence consistent with mental dysfunction but ultimately determining that the record did not support disability). To the extent that Plaintiff advocates for a different interpretation of the record, the ALJ's determination was reasonable and thus it must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Accordingly, the Court concludes that the ALJ did not err by finding Dr. Watt's report not "generally persuasive" after consideration of the supportability and consistency factors.

### 2. Dr. Tyl

The Court turns to Dr. Tyl, who was a state agency mental consultant, and opined on Plaintiff's limitations. In deeming the opinion "partially persuasive," the ALJ stated as follows:

> The state agency mental consultant at the reconsideration level found the claimant had moderate limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Exhibits 5A; 6A). Overall, the consultant found the claimant is limited to simple, one-two step tasks that do not require interaction with the public and only minimal interaction with others (Exhibits 5A; 6A). Although the consultant's opinion is supported by his own explanation referencing the medical record, he did not have the benefit of an in-person examination of the claimant, nor did he have the benefit of reviewing all of the evidence available in the record at the hearing level (Exhibits 5A; 6A; 5F-7F). Additionally, while the consultant's findings regarding the claimant's limitations in the four broad areas of mental functioning are consistent with the objective medical evidence, his opinion regarding the claimant's overall mental functional capacity is not entirely consistent with the evidence (Exhibits 5A; 6A; 2F; 5F-7F). For instance, the evidence, including mental status examinations reflecting mostly unremarkable findings and the claimant's longitudinal treatment history, as discussed above, is not consistent with a finding that the claimant would be limited to no interaction with the public (Exhibits 2F/11, 14, 26, 29, 33, 36, 42, 45, 48, 51, 58, 60; 5F/11, 14, 20, 23, 26, 29, 33, 35, 51, 54, 66, 69, 73, 76, 82, 85, 88, 91, 98, 100; 6F/5, 8, 29, 32). Accordingly, overall, I find the opinion of the state agency mental consultant at the reconsideration level partially persuasive.

(A.R. 31, 115-18).

Plaintiff argues that this reasoning is deficient for four reasons. First, Plaintiff argues that, because the new regulations eliminate deference to certain medical opinions, it was incorrect to find the opinion less persuasive, in part, because Dr. Tyl did not examine Plaintiff. (ECF No. 12-

1, p. 22). True, the new regulations eliminate special deference to examining physicians' opinions. *Woods*, 32 F.4th at 792. But contrary to Plaintiff's argument, that does not mean that the ALJ cannot consider whether a doctor examined a plaintiff in evaluating the persuasiveness of an opinion. While supportability and consistency are the most important factors, and an ALJ is required to explain how they were considered, there are other factors that an ALJ " may, but [is] not required to, explain." 20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2). Among these other factors are those that relate to the relationship with the claimant, including the frequency of examination and the examining relationship. 20 C.F.R. § 404.1520c(c)(3)(ii & v), § 416.920c(c)(3)(ii & v) ( "Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s)." "Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."). Because a medical source's examination is still a pertinent factor for consideration, the Court finds no error.

Second, Plaintiff argues that it was improper for the ALJ to discount Dr. Tyl's assessment—that Plaintiff could have no interaction with the general public—based on normal exams without acknowledging that interacting with a medical provider may be different than interacting with the public. (ECF No. 12-1, p. 23). However, Plaintiff ignores the other reasons that the ALJ used to discount Dr. Tyl's opinion. Beyond normal interactions with medical providers, the ALJ noted elsewhere in the opinion, in discussing Plaintiff's ability to interact with others, that she "reported going for walks, riding her bike, spending time with friends and family members, and that she is able to go places on her own and has never been fired or laid off from a job because of problems getting along with other people." (A.R. 27). Considered in conjunction with the ALJ's other reasoning, this was a reasonable basis to discount Dr. Tyl's opinion that Plaintiff could have no interaction with the public.

Third, Plaintiff argues that the record evidence is consistent with Dr. Tyl's opinion, and the ALJ failed to explain the basis to discount favorable evidence. (ECF No. 12-1, p. 24). However, for the reasons discussed above, the Court concludes that the ALJ properly considered

evidence favorable to Plaintiff but reasonably interpreted the record of mostly normal findings to discount the degree of limitations opined by Dr. Tyl.

Lastly, Plaintiff argues that the ALJ erred by failing to explain why the RFC did not include Dr. Tyl's opinion that Plaintiff would be restricted to minimal interaction with others, presumably "others" referring to coworkers and supervisors. (ECF No. 12-1, p. 25). However, based on the opinion's citation to records showing Plaintiff had normal interactions with others and Plaintiff's own reports of being able to interact with others, the Court concludes that the ALJ had a reasonable basis to limit Plaintiff to occasional rather than minimal interaction with coworkers and supervisors. Moreover, it is worth considering the pertinent limitation in the RFC—limiting Plaintiff to occasional interaction with coworkers and supervisors—in conjunction with the jobs identified at Step 5, which require a people level of 8 in terms of interacting with others. *See* Cleaner, Industrial, DICOT 381.687-018, 1991 WL 673258; Cleaner, Hospital, DICOT 323.687-010, 1991 WL 672782; Packager, DICOT 920.587-018, 1991 WL 687916. A people level 8 is "the lowest level of interaction with people that is necessary for jobs listed in the DOT." *Hann v. Colvin*, No. 12-CV-06234-JCS, 2014 WL 1382063, at *23 (N.D. Cal. Mar. 28, 2014) (finding harmless error where the ALJ should have limited Plaintiff to occasional contact with supervisors but where the jobs that plaintiff could perform required a people level of 8).

In short, the Court concludes, the ALJ did not err in finding Dr. Tyl's opinion "partially persuasive" in conjunction with the supportability and consistency factors.

**B. RFC**

Building off her argument that the ALJ improperly evaluated the medical opinions by Dr. Watt and Dr. Tyl, Plaintiff next argues that "the ALJ further erred by relying upon his own lay interpretation of the raw medical evidence in determining Plaintiff's mental limitations." (ECF No. 12-1, p. 13). In short, Plaintiff argues that "the ALJ rejected all opinion evidence regarding Plaintiff's limitations in interacting with others" and "was required to develop the record where necessary to fill the evidentiary gaps of the record," rather than interpret the raw data to formulate the RFC. (Id. at 28).

First, as a general matter, there "is a presumption that ALJs are, at some level, capable of

independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). Second, there is nothing to show that the ALJ made explicit medical judgments based on the raw data from the MRIs or other records. The ALJ's decision that Plaintiff was capable of occasionally interacting with others was based on records showing the Plaintiff could interact with others and Plaintiff's own reports that she was capable, at least at some level, of doing so.

Accordingly, the Court does not find that the ALJ interpreted raw data in formulating the RFC.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated: **June 26, 2023**　　　　　　　　　　/s/ *Erica P. Grosjean*
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE